IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 28, 2018

## RAYMOND ARTHUR KLEIN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County
No. 41400576      William R. Goodman III, Judge**

_____

### No. M2018-00155-CCA-R3-PC

_____

Petitioner, Raymond Arthur Klein, appeals the denial of his petition for post-conviction relief from his conviction for aggravated sexual battery. On appeal, Petitioner argues that he received ineffective assistance of counsel. After thorough review, we determine that Petitioner has failed to prove that trial counsel's performance was deficient and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Raymond Arthur Klein.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; John W. Carney, District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner was charged with one count of aggravated sexual battery for luring the victim into his bedroom and inappropriately touching her. *State v. Raymond A. Klein*, No. M2014-02340-CCA-R3-CD, 2016 WL 493248, at *1 (Tenn. Crim. App. Feb. 9, 2016), *perm. app. denied* (Tenn. June 23, 2016). The victim was a minor child who often played with Petitioner's daughter. *Id.* At trial, the victim testified about Petitioner's actions, and Petitioner was convicted as charged by a jury. *Id.* at *1-2. Petitioner was sentenced to nine years of incarceration, to be served at 100%. This Court affirmed Petitioner's convictions on direct appeal. *Id.* at *1. Subsequently, Petitioner filed a

petition for post-conviction relief, and the post-conviction court held a hearing on the matter.

At the post-conviction hearing, Petitioner testified that he met with trial counsel only one time in preparation for trial. This was a "video visit" that Petitioner described as lasting only fifteen minutes. He recalled that during the meeting, trial counsel focused on explaining legal terms and that they did not spend much time talking about the case. In total, Petitioner said that trial counsel met with him "three or four" times and that each meeting was less than half an hour. However, Petitioner claimed that they only spoke about the facts of his case for "about five, ten-minutes." He said that they talked about the videotaped interview of the victim, but Petitioner did not get to see the videotape prior to trial. Petitioner said, "We were supposed to prepare, talk about the discovery pack more than we did." Petitioner claimed he only received a portion of his discovery. "Every time I tried calling [trial counsel,] he never answered," said Petitioner. He received two letters from trial counsel, but Petitioner said trial counsel never responded to the letter that Petitioner wrote to him. Petitioner was incarcerated from the time that he was taken into custody until trial, approximately two years. According to Petitioner, trial counsel admitted after trial that "if he wasn't appointed [to] so many cases the outcome might have been different; he would have been able to put more time into [Petitioner's] case and see [Petitioner] as he should have."

Petitioner asked trial counsel to "check in" on some character references that had known the victim and the victim's mother longer than Petitioner. Petitioner believed that one of the witnesses would testify that at some point, Petitioner's ex-wife had hired the witness to hit her and make it look like Petitioner had assaulted her. Petitioner stated that his ex-wife was best friends with the victim's mother. Also, Petitioner asked trial counsel to contact his former employer. Petitioner proposed that his former employer had been present for "several arguments" between Petitioner and his ex-wife and that he could have proven that some of Petitioner's ex-wife's allegations of infidelity were untrue. As far as Petitioner knew, trial counsel never contacted those individuals.

Petitioner also said, "I wasn't prepared at all to testify and he had me called up." However, Petitioner admitted during cross-examination that he chose to testify of his own free will.

Trial counsel testified that he had served in two different public defender's offices but that he represented Petitioner during a period of his career when he was in private practice. He recalled meeting with Petitioner "somewhere between six and [a] dozen times" over the course of his two-year representation. He recalled the length of the meetings varying from ten minutes to forty-five minutes, depending on the nature of the meeting. Trial counsel remembered that Petitioner told his side of the story to him during their discussions, and they developed a case theory. Trial counsel also communicated a

- 2 -

plea offer from the State to Petitioner, but Petitioner rejected the offer. Trial counsel recalled the majority of his meetings with Petitioner were face-to-face. Trial counsel gave Petitioner the complete copy of the discovery packet except for the discs that contained the video because Petitioner would have no way of playing them. When it came to playing the video for Petitioner, trial counsel said, "I believe we would have, but I don't have a distinctive memory of showing him that."

Trial counsel recalled a discussion about Petitioner's ex-wife setting him up, but trial counsel did not recall a discussion about a witness who had been paid to hit Petitioner's ex-wife. Trial counsel also did not remember a discussion about Petitioner's former employer being called as a witness. Trial counsel did not recall telling Petitioner he wished he could have had more time to prepare for the case.

After the hearing, the post-conviction court denied relief in a written order and found that trial counsel's representation was not deficient.

*Analysis*

Petitioner claims that trial counsel rendered ineffective assistance of counsel because he failed to adequately meet with Petitioner and prepare for trial.[1] The State disagrees and argues that Petitioner has failed to show that trial counsel was ineffective in his investigation or preparation. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are

---

[1] Petitioner alleged other deficiencies at the post-conviction hearing, but because those alleged deficiencies were not brought up on appeal, they are waived. *See* Tenn. R. Ct. Crim. App. 10(b) (stating "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this court."); *State v. Thomas*, 158 S.W.3d 361, 393 (Tenn. 2005).

reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392–93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697). Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* (quoting *Strickland*, 466 U.S. at 691).

Petitioner's entire argument on appeal is centered on one statement that Petitioner attributes to trial counsel. Petitioner claims trial counsel said that "if he wasn't appointed [to] so many cases the outcome might have been different; he would have been able to put more time into [Petitioner's] case and see [Petitioner] as he should have." Petitioner wrongly claims that this statement was not disputed. When he was asked if he had made a statement along those lines, trial counsel said that he could not recall making any such statement.

The post-conviction court's finding that there was no deficient performance implicitly accredits trial counsel's recollection of meeting with Petitioner six to twelve times during his representation. Trial counsel also recalled developing a case theory while speaking with Petitioner and providing Petitioner with the entire discovery packet with the exception of discs that Petitioner would have been unable to play while incarcerated. Petitioner testified that he wanted more communication from trial counsel, but Petitioner's desire for more communication does not mean that trial counsel was deficient. Petitioner was unable to point to any part of the trial proceeding that illustrated that trial counsel was unprepared. Petitioner also said that he was not prepared to testify but admitted that he did so willingly. He points to no specific part of his testimony showing a lack of preparation for his testifying. Without more, we must hold that Petitioner has failed to prove that trial counsel was deficient. In light of our determination that trial counsel was not deficient, we need not conduct further analysis. *See Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697).

*Conclusion*

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE